**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 22-20661-CIV-ALTONAGA/Torres**

**YUKEN CORP**.,

    Plaintiff,

v.

**GEDCORE LLC**; *et al*.,

    Defendants.

_____/

## AMENDED COMPLAINT

Plaintiff YUKEN CORP., sues Defendants GEDCORE LLC, CALEB DANIEL ADMASIE a/k/a CALEB DANIEL ADMASSIE, MELIKTU FANEUL and TESH TESFAYE (hereinafter collectively referred to as the "Defendants") and alleges:

### Jurisdiction and Venue

1.    This is an action for damages in excess of $150,000, exclusive of interest, attorneys' fees and costs.

2.    Plaintiff, Yuken Corp. ("**Plaintiff" or "Yuken**") is a corporation organized and existing in the State of Florida with is principal office in Miami-Dade County, Florida.

3.    Defendant, Gedcore, LLC, ("**Gedcore**") was at times material hereto a limited liability company organized and existing under the laws of the state of Georgia. The date of Gedcore's formation was July 10, 2020 and a Certificate of Termination was filed with the office of the Secretary of State for the State of Georgia on September 27, 2021.  Gedcore's principal and registered office addresses were listed with the State of Georgia as 349 Ardmore Ct., NW, Atlanta, GA, 30309.

4.      Prior to filing the Certificate of Termination, Gedcore failed to take the necessary steps that were required to properly terminate its corporate existence. More specifically, no statement of dissolution (or commencement of winding up) was filed with the Secretary of State for the State of Georgia, notice of dissolution (or commencement of winding up) was not provided to Gedcore's creditors and other claimants and Gedcore did not discharge or make provision to discharge its liabilities.  Accordingly, the filing of the Certificate of Termination does not bar the claims asserted herein against Gedcore and these claims may be enforced against Gedcore to the extent of its undistributed assets or against each member receiving a distribution in winding up to the extent of the assts so distributed to each member. For example, see Ga. Code Ann. §14-11-604; Ga. Code Ann. §14-11-605; Ga. Code Ann. §14-11-606; Ga. Code Ann. §14-11-607; Ga. Code Ann. §14-11-608; Ga. Code Ann. §14-11-610.

5.      Defendant, Caleb Daniel Admasie a/k/a Caleb Daniel Admassie ("**Admasie**") is believed to be an Ethiopian citizen, Gedcore's Chief Executive Officer, a member of Gedcore and a recipient of distributions of assets in the winding up of Gedcore's affairs.

6.      Defendant, Meliktu Faneul ("**Fanuel**"), is believed to be a citizen of Ethiopia, Gedcore's  Chief Operating Officer, a member of Gedcore and a recipient of distributions of assets in the winding up of Gedcore's affairs. Fanuel also appears on the corporate filings of Gedcore as the "Organizer" and as Gedcore's Registered Agent with an address of 349 Ardmore Ct., NW, Atlanta, GA, 30309 which is also listed as Gedcore's principal and registered office addresses.  The use and listing and use of this address appears to be a sham because when service was attempted on Fanuel at this address, the process server was told by the resident that Fanuel was unknown at that address.

7.      Defendant, Tesh Tesfaye ("**Tesfaye**"), is believed to be an Ethiopian citizen, a Director of Gedcore, a member of Gedcore and a recipient of distributions of assets in the winding up of Gedcore's affairs.

8.      Venue is proper in Miami-Dade County, Florida, because the acts or omissions giving rise to the causes of action sued upon occurred and originated in Miami-Dade County, Florida.

9.      This Court has jurisdiction over the Defendants pursuant to Florida Statutes Section 48.193 because they have: (a) committed tortious acts within the State of Florida; and, (b) breached a contract in this state by failing to perform acts required by the contract to be performed in this state (to wit: payment of the deposit money identified below).

10.     Any conditions precedent to the filing of this action have been performed, have occurred or have been waived or excused.

<u>**General Allegations**</u>

11.     Plaintiff and Gedcore entered into a Contract dated March 17, 2021 – identified as Contract No. 20210516-01-YUK ("**Contract**"). A copy of the Contract is attached hereto as <u>Exhibit "A</u>."

12.     Pursuant to the Contract, Gedcore was to sell to Yuken frozen lobster tails for delivery into the United States. The Contract called for the delivery of 25,000 pounds in April 2021 and 100,000 pounds to be delivered in each month from May through July 2021. The Contract required Yuken to pay all invoiced amounts as and once the products cleared US Customs and FDA.

13.     The Contract was negotiated on behalf of Gedcore by Adamasie. Admasie signed the Contract on behalf of Gedcore.

14.     Pursuant to the Contract, Yuken paid Gedcore an initial deposit of $150,000 ("**Deposit**").  The Deposit was paid by Yuken in two payments of $75,000 each; an initial payment of $75,000 and a second payment of $75,000 when Yuken was advised that the product was ready to be shipped.  It was the understanding between Gedcore and Yuken that the entire Deposit was to be held in escrow and would stand as a security deposit to secure Yuken's payment obligations until the season was over at which time the Deposit would be returned to Yuken.

15.      No lobster tails were ever delivered.

3

16.     Yuken has terminated the Contract and demanded the return of the Deposit.

17.     Despite Gedcore and Admasie acknowledging Yuken's entitlement to the return of the Deposit, the Deposit has not been returned.

18.     Instead of returning the Deposit, on September 27, 2021, less than three weeks after Gedcore received a letter from Plaintiff's Counsel renewing the Plaintiff's demand for the return of the Deposit, Gedcore filed a Certificate of Termination with the Secretary of State for the State of Georgia. The Certificate of Termination was signed by Fanuel on behalf of Gedcore and stated that adequate provision for the payment of the debts, liabilities, and obligations of Gedcore have been made and there are no actions pending against Gedcore in any court.

19.     Prior to the Contract, Admasie falsely and fraudulently represented to Yuken that Gedcore had sufficient inventory of lobster tails knowing that Gedcore did not have the inventory and would never be able to deliver the lobster tails to satisfy any order placed by Yuken.  Admasie made this misrepresentation to induce Yuken to enter into the Contract with Gedcore and to pay Gedcore the Deposit.  Admasie renewed the fraudulent representation at the time Yuken was requested to make the second $75,000.00 payment to complete the Deposit.  At that time, and to induce Yuken to make the balance of the Deposit payment, Admasie falsely told Yuken that the lobster tails were ready to be shipped knowing in fact there were no lobster tails that were ready to be shipped.   The misrepresentations regarding the lobster tails being in inventory and that the lobster tails were ready to be shipped when in fact they were not shall be collectively and individually referred to as the "**Fraudulent Misrepresentations**."

20.     Yuken detrimentally relied on the Fraudulent Misrepresentations and was thereby induced into entering into the Contract and paying the Deposit based on the Fraudulent Misrepresentations.

**Count I - Conversion-Gedcore**

21.     Plaintiff re-adopts and re-alleges each and every allegation contained in paragraphs 1 through 9(a), and 10 through 20 above.

22.     The purpose of the Deposit was to secure Yuken's payment obligations and accordingly, it was understood between Gedcore and Yuken that Gedcore would hold, keep, and maintain the Deposit intact during the entire term of the Contract so that the Deposit could be returned to Yuken upon the termination of the Contract.

23.     Gedcore exercised unauthorized rights over Plaintiff's Deposit by (i) not holding, keeping and maintaining the Deposit intact during the term of the Contract and (ii) by not returning the Deposit once Yuken terminated the Contract.

24.     Gedcore's actions are inconsistent with the rights of Plaintiff who is the rightful owner of the Deposit.

25.     Gedcore's actions have deprived Plaintiff of the use and benefit of the Deposit.

26.     Plaintiff has an immediate right to the Deposit.

27.     By wrongfully depriving Plaintiff of the Deposit, Gedcore has caused Plaintiff to sustain damages.

28.     Gedcore's actions constitute a conversion of the Deposit.

WHEREFORE, Plaintiff, Yuken Corp. demands judgment against Gedcore for damages, interest, court costs, and such other relief in Plaintiff's favor that is just. Plaintiff reserves the right to seek punitive damages.

**Count II - Conversion-Admasie**

29.     Plaintiff re-adopts and re-alleges each and every allegation contained in paragraphs 1 through 9(a), and 10 through 20 above.

30.     The purpose of the Deposit was to secure Yuken's payment obligations and accordingly, it was understood between Gedcore and Yuken that Gedcore would hold, keep, and maintain the Deposit intact during the entire term of the Contract so that the Deposit could be returned to Yuken upon the termination of the Contract.

31.     Gedcore exercised unauthorized rights over Plaintiff's Deposit by (i) not holding, keeping and maintaining the Deposit intact during the term of the Contract and (ii) by not returning the Deposit once Yuken terminated the Contract.

32.     Gedcore's actions are inconsistent with the rights of Plaintiff who is the rightful owner of the Deposit.

33.     Gedcore's actions have deprived Plaintiff of the use and benefit of the Deposit.

34.     Plaintiff has an immediate right to the Deposit.

35.     By wrongfully depriving Plaintiff of the Deposit, Gedcore has caused Plaintiff to sustain damages.

36.     Gedcore's actions constitute a conversion of the Deposit.

37.     Admasie conspired and worked in concert with Fanuel and Tesfaye to induce, aid, abet, encourage and provide substantial assistance to Gedcore relative to the conversion of the Deposit. More specifically, upon information and belief, Admasie, Fanuel and Tesfaye, each individually and on behalf of Gedcore, agreed to work together and knowingly allow Gedcore to be used as the vehicle to unlawfully scam and dupe Yuken out of $150,000 by: (i) having Admasie make the Fraudulent Misrepresentations to Yuken to induce Yuken to pay the Deposit to Gedcore; (ii) having Gedcore accept and collect the payment of the Deposit and then utilize and disburse the Deposit for their own individual and collective benefit; (iii) not requiring that Gedcore hold, keep and maintain the Deposit intact so that the Deposit could be returned to Yuken once the Contract was terminated; (iv) terminating Gedcore before a lawsuit

could be filed and served relative to the Deposit; and, (v) not making adequate provisions for the payment of the debts, liabilities, and obligations of Gedcore, including those owed to Yuken.

38.     As a result of Admasie's actions Yuken has been damaged by the wrongful conversion of the Deposit.

39.     WHEREFORE, Plaintiff, Yuken Corp. demands judgment against Admasie for damages, interest, court costs, and such other relief in Plaintiff's favor that is just. Plaintiff reserves the right to seek punitive damages.

### Count III - Conversion-Admasie (Georgia Business Corporation Code)

40.     Plaintiff re-adopts and re-alleges each and every allegation contained in paragraphs 1 through 9(a), and 10 through 20 above.

41.     The purpose of the Deposit was to secure Yuken's payment obligations and accordingly, it was understood between Gedcore and Yuken that Gedcore would hold, keep, and maintain the Deposit intact during the entire term of the Contract so that the Deposit could be returned to Yuken upon the termination of the Contract.

42.     Gedcore exercised unauthorized rights over Plaintiff's Deposit by (i) not holding, keeping and maintaining the Deposit intact during the term of the Contract and (ii) by not returning the Deposit once Yuken terminated the Contract.

43.     Gedcore's actions are inconsistent with the rights of Plaintiff who is the rightful owner of the Deposit.

44.     Gedcore's actions have deprived Plaintiff of the use and benefit of the Deposit.

45.     Plaintiff has an immediate right to the Deposit.

46.     By wrongfully depriving Plaintiff of the Deposit, Gedcore has caused Plaintiff to sustain damages.

47.     Gedcore's actions constitute a conversion of the Deposit.

48.      Admasie is liable for Gedcore's conversion of the Deposit to the extent he received distribution(s) of assets as part of an attempt to wind up, dissolve and terminate Gedcore.

WHEREFORE, Plaintiff, Yuken Corp. demands judgment against Admasie for damages, interest, court costs, and such other relief in Plaintiff's favor that is just. Plaintiff reserves the right to seek punitive damages.

### Count IV – Conversion - Fanuel

49.      Plaintiff re-adopts and re-alleges each and every allegation contained in paragraphs 1 through 9(a), and 10 through 20 above.

50.       The purpose of the Deposit was to secure Yuken's payment obligations and accordingly, it was understood between Gedcore and Yuken that Gedcore would hold, keep, and maintain the Deposit intact during the entire term of the Contract so that the Deposit could be returned to Yuken upon the termination of the Contract.

51.      Gedcore exercised unauthorized rights over Plaintiff's Deposit by (i) not holding, keeping and maintaining the Deposit intact during the term of the Contract and (ii) by not returning the Deposit once Yuken terminated the Contract.

52.      Gedcore's actions are inconsistent with the rights of Plaintiff who is the rightful owner of the Deposit.

53.       Gedcore's actions have deprived Plaintiff of the use and benefit of the Deposit.

54.      Plaintiff has an immediate right to the Deposit.

55.       By wrongfully depriving Plaintiff of its Deposit, Gedcore has caused Plaintiff to sustain damages.

56.       Gedcore's actions constitute a conversion of the Deposit.

57.      Fanuel conspired and worked in concert with Admasie and Tesfaye to induce, aid, abet, encourage and provide substantial assistance to Gedcore relative to the conversion of the Deposit.

More specifically, upon information and belief, Admasie, Fanuel and Tesfaye, each individually and on behalf of Gedcore, agreed to work together and knowingly allow Gedcore to be used as the vehicle to unlawfully scam and dupe Yuken out of $150,000 by: (i) having Admasie make the Fraudulent Misrepresentations to Yuken to induce Yuken to pay the Deposit to Gedcore; (ii) having Gedcore accept and collect the payment of the Deposit and then utilize and disburse the Deposit for their own individual and collective benefit; (iii) not requiring that Gedcore hold, keep and maintain the Deposit intact so that the Deposit could be returned to Yuken once the Contract was terminated; (iv) terminating Gedcore before a lawsuit could be filed and served relative to the Deposit; and, (v) not making adequate provisions for the payment of the debts, liabilities, and obligations of Gedcore, including those owed to Yuken.

58.     As a result of Fanuel's actions Yuken has been damaged by the wrongful conversion of the Deposit.

WHEREFORE, Plaintiff, Yuken Corp. demands judgment against Fanuel for damages, interest, court costs, and such other relief in Plaintiff's favor that is just. Plaintiff reserves the right to seek punitive damages.

### Count V – Conversion – Fanuel (Georgia Business Corporation Code)

59.     Plaintiff re-adopts and re-alleges each and every allegation contained in paragraphs 1 through 9(a), and 10 through 20 above.

60.     The purpose of the Deposit was to secure Yuken's payment obligations and accordingly, it was understood between Gedcore and Yuken that Gedcore would hold, keep, and maintain the Deposit intact during the entire term of the Contract so that the Deposit could be returned to Yuken upon the termination of the Contract.

61.     Gedcore exercised unauthorized rights over Plaintiff's Deposit by (i) not holding, keeping and maintaining the Deposit intact during the term of the Contract and (ii) by not returning the Deposit once Yuken terminated the Contract.

62.     Gedcore's actions are inconsistent with the rights of Plaintiff who is the rightful owner of the Deposit.

63.     Gedcore's actions have deprived Plaintiff of the use and benefit of the Deposit.

64.     Plaintiff has an immediate right to the Deposit.

65.     By wrongfully depriving Plaintiff of the Deposit, Gedcore has caused Plaintiff to sustain damages.

66.     Gedcore's actions constitute a conversion of the Deposit.

67.     Fanuel is liable for Gedcore's conversion of the Deposit to the extent he received distribution(s) of assets as part of an attempt to wind up, dissolve and terminate Gedcore.

WHEREFORE, Plaintiff, Yuken Corp. demands judgment against Fanuel for damages, interest, court costs, and such other relief in Plaintiff's favor that is just. Plaintiff reserves the right to seek punitive damages.

### Count VI – Conversion - Tesfaye

68.     Plaintiff re-adopts and re-alleges each and every allegation contained in paragraphs 1 through 9(a), and 10 through 20 above.

69.     The purpose of the Deposit was to secure Yuken's payment obligations and accordingly, it was understood between Gedcore and Yuken that Gedcore would hold, keep, and maintain the Deposit intact during the entire term of the Contract so that the Deposit could be returned to Yuken upon the termination of the Contract.

70.     Gedcore exercised unauthorized rights over  Plaintiff's   Deposit   by (i) not holding, keeping and maintaining the Deposit intact during the term of the Contract and (ii) by not returning the Deposit once Yuken terminated the Contract.

71.     Gedcore's actions are inconsistent with the rights of Plaintiff who is the rightful owner of the Deposit.

72.     Gedcore's actions have deprived Plaintiff of the use and benefit of the Deposit.

73.     Plaintiff has an immediate right to the Deposit.

74.     By wrongfully depriving Plaintiff of its Deposit, Gedcore has caused Plaintiff to sustain damages.

75.     Gedcore's actions constitute a conversion of the Deposit.

76.     Tesfaye conspired and worked in concert with Admasie and Tesfaye to induce, aid, abet, encourage and provide substantial assistance to Gedcore relative to the conversion of the Deposit. More specifically, upon information and belief, Admasie, Fanuel and Tesfaye, each individually and on behalf of Gedcore, agreed to work together and knowingly allow Gedcore to be used as the vehicle to unlawfully scam and dupe Yuken out of $150,000 by: (i) having Admasie make the Fraudulent Misrepresentations to Yuken to induce Yuken to pay the Deposit to Gedcore; (ii) having Gedcore accept and collect the payment of the Deposit and then utilize and disburse the Deposit for their own individual and collective benefit; (iii) not requiring that Gedcore hold, keep and maintain the Deposit intact so that the Deposit could be returned to Yuken once the Contract was terminated; (iv) terminating Gedcore before a lawsuit could be filed and served relative to the Deposit; and, (v) not making adequate provisions for the payment of the debts, liabilities, and obligations of Gedcore, including those owed to Yuken.

77.     As a result of Tesfaye's actions Yuken has been damaged by the wrongful conversion of the Deposit.

WHEREFORE, Plaintiff, Yuken Corp. demands judgment against Tesfaye for damages, interest, court costs, and such other relief in Plaintiff's favor that is just. Plaintiff reserves the right to seek punitive damages.

## **Count VII – Conversion – Tesfaye (Georgia Business Corporation Code)**

78.     Plaintiff re-adopts and re-alleges each and every allegation contained in paragraphs 1 through 9(a), and 10 through 20 above.

79.     The purpose of the Deposit was to secure Yuken's payment obligations and accordingly, it was understood between Gedcore and Yuken that Gedcore would hold, keep, and maintain the Deposit intact during the entire term of the Contract so that the Deposit could be returned to Yuken upon the termination of the Contract.

80.     Gedcore exercised unauthorized rights over Plaintiff's Deposit by (i) not holding, keeping and maintaining the Deposit intact during the term of the Contract and (ii) by not returning the Deposit once Yuken terminated the Contract.

81.     Gedcore's actions are inconsistent with the rights of Plaintiff who is the rightful owner of the Deposit.

82.     Gedcore's actions have deprived Plaintiff of the use and benefit of the Deposit.

83.     Plaintiff has an immediate right to the Deposit.

84.     By wrongfully depriving Plaintiff of the Deposit, Gedcore has caused Plaintiff to sustain damages.

85.     Gedcore's actions constitute a conversion of the Deposit.

86.     Tesfaye is liable for Gedcore's conversion of the Deposit to the extent he received distribution(s) of assets as part of an attempt to wind up, dissolve and terminate Gedcore.

WHEREFORE, Plaintiff, Yuken Corp. demands judgment against Tesfaye for damages, interest, court costs, and such other relief in Plaintiff's favor that is just. Plaintiff reserves the right to seek punitive damages.

### Count VIII -Breach of Contract- Gedcore

87.     Plaintiff re-adopts and re-alleges each and every allegation contained in paragraphs 1 through 9(b), and 10 through 18 above.

88.    When the lobster tails were not delivered, Admasie on behalf of Gedcore offered to substitute frozen whole boneless skinless chicken breasts chicken instead of the lobster tails that were not delivered.

89.    The chicken breasts that were to have been substituted for the lobster tails were also not delivered by Gedcore causing losses to Yuken's customers who were forced to cover by buying chicken at elevated prices and who are declaring these losses to be the responsibility of Yuken because of the non-performance.

90.    Plaintiff is entitled to the return of the Deposit under and pursuant to the terms of the Contract.

91.    The failure to return the deposit is a breach of contract.

92.    The breach of contract has damaged Yuken including those damages stemming from the losses caused to Yuken's customers and the resulting damage to Plaintiff's reputation.

WHEREFORE, Plaintiff, Yuken Corp. demands judgment against Defendant, Gedcore for damages, interest, court costs, and such other relief that is just.

### Count IX -Breach of Contract- Admasie (Georgia Business Corporation Code)

93.     Plaintiff re-adopts and re-alleges each and every allegation contained in paragraphs 1 through 9(b), and 10 through 18 above.

94.    When the lobster tails were not delivered, Admasie on behalf of Gedcore offered to substitute frozen whole boneless skinless chicken breasts chicken instead of the lobster tails that were not delivered.

95.    The chicken breasts that were to have been substituted for the lobster tails were also not delivered by Gedcore causing losses to Yuken's customers who were forced to cover by buying chicken at elevated prices and who are declaring these losses to be the responsibility of Yuken because of the non-performance.

96.     Plaintiff is entitled to the return of the Deposit under and pursuant to the terms of the Contract.

97.     The failure to return the deposit is a breach of contract.

98.     The breach of contract has damaged Yuken including those damages stemming from the losses caused to Yuken's customers and the resulting damage to Plaintiff's reputation.

99.     Admasie is liable for the damages caused by the breach of contract to the extent he received distribution(s) of assets as part of an attempt to wind up, dissolve and terminate Gedcore.

WHEREFORE, Plaintiff, Yuken Corp. demands judgment against Defendant, Admasie for damages, interest, court costs, and such other relief that is just.

**Count X -Breach of Contract- Fanuel (Georgia Business Corporation Code)**

100.     Plaintiff re-adopts and re-alleges each and every allegation contained in paragraphs 1 through 9(b), and 10 through 18 above.

101.     When the lobster tails were not delivered, Admasie on behalf of Gedcore offered to substitute frozen whole boneless skinless chicken breasts chicken instead of the lobster tails that were not delivered.

102.     The chicken breasts that were to have been substituted for the lobster tails were also not delivered by Gedcore causing losses to Yuken's customers who were forced to cover by buying chicken at elevated prices and who are declaring these losses to be the responsibility of Yuken because of the non-performance.

103.     Plaintiff is entitled to the return of the Deposit under and pursuant to the terms of the Contract.

104.     The failure to return the deposit is a breach of contract.

105.     The breach of contract has damaged Yuken including those damages stemming from the losses caused to Yuken's customers and the resulting damage to Plaintiff's reputation.

14

106.    Fanuel is liable for damages caused by the breach of contract to the extent he received distribution(s) of assets as part of an attempt to wind up, dissolve and terminate Gedcore.

WHEREFORE, Plaintiff, Yuken Corp. demands judgment against Defendant, Fanuel for damages, interest, court costs, and such other relief that is just.

### Count XI -Breach of Contract- Tesfaye (Georgia Business Corporation Code)

107.    Plaintiff re-adopts and re-alleges each and every allegation contained in paragraphs 1 through 9(b), and 10 through 18 above.

108.    When the lobster tails were not delivered, Admasie on behalf of Gedcore offered to substitute frozen whole boneless skinless chicken breasts chicken instead of the lobster tails that were not delivered.

109.    The chicken breasts that were to have been substituted for the lobster tails were also not delivered by Gedcore causing losses to Yuken's customers who were forced to cover by buying chicken at elevated prices and who are declaring these losses to be the responsibility of Yuken because the non-performance.

110.    Plaintiff is entitled to the return of the Deposit under and pursuant to the terms of the Contract.

111.    The failure to return the deposit is a breach of contract.

112.    The breach of contract has damaged Yuken including those damages stemming from the losses caused to Yuken's customers and the resulting damage to Plaintiff's reputation.

113.    Tesfaye is liable for the damages caused by the breach of contract to the extent he received distribution(s) of assets as part of an attempt to wind up, dissolve and terminate Gedcore.

WHEREFORE, Plaintiff, Yuken Corp. demands judgment against Defendant, Tesfaye for damages, interest, court costs, and such other relief that is just.

### Count XII - Fraud-Gedcore

15

114.    Plaintiff re-adopts and re-alleges each and every allegation contained in paragraphs 1 through 9(a) and 10 through 20 above.

115.    The Fraudulent Misrepresentations were false statements made concerning a material fact.

116.    Gedcore knew that the Fraudulent Misrepresentations were false.

117.    Gedcore intended that the Fraudulent Representations induce Yuken to act on the representations.

118.    Yuken has been damaged acting in reliance of the Fraudulent Misrepresentations.

WHEREFORE, Plaintiff, Yuken Corp. demands judgment against Gedcore for damages, interest, court costs, and such other relief that is just. Plaintiff reserves the right to seek punitive damages.

## Count XIII - Fraud-Admasie

119.    Plaintiff re-adopts and re-alleges each and every allegation contained in paragraphs 1 through 9(a) and 10 through 20 above.

120.    The Fraudulent Misrepresentations were false statements made concerning a material fact.

121.    Admasie knew that the Fraudulent Misrepresentations were false.

122.    Admasie intended that the Fraudulent Representations induce Yuken to act on the representations.

123.    Yuken has been damaged acting in reliance of the Fraudulent Misrepresentations.

124.    Admasie conspired and worked in concert with Fanuel and Tesfaye to induce, aid, abet, encourage and provide substantial assistance to Gedcore relative to the fraudulent misrepresentation. More specifically, upon information and belief, Admasie, Fanuel and Tesfaye, each individually and on behalf of Gedcore, agreed to work together and knowingly allow Gedcore to be used as the vehicle to

unlawfully scam and dupe Yuken out of $150,000 by: (i) having Admasie make the Fraudulent Misrepresentations to Yuken to induce Yuken to pay the Deposit to Gedcore; (ii) having Gedcore accept and collect the payment of the Deposit and then utilize and disburse the Deposit for their own individual and collective benefit; (iii) not requiring that Gedcore hold, keep and maintain the Deposit intact so that the Deposit could be returned to Yuken once the Contract was terminated; (iv) terminating Gedcore before a lawsuit could be filed and served relative to the Deposit; and, (v) not making adequate provisions for the payment of the debts, liabilities, and obligations of Gedcore, including those owed to Yuken.

125.    Accordingly, Admasie is liable for the damages caused by the Fraudulent Misrepresentations.

WHEREFORE, Plaintiff, Yuken Corp. demands judgment against Admasie for damages, interest, court costs, and such other relief that is just. Plaintiff reserves the right to seek punitive damages.

## Count XIV - Fraud-Admasie (Georgia Business Corporation Code)

126.    Plaintiff re-adopts and re-alleges each and every allegation contained in paragraphs 1 through 9(a) and 10 through 20 above.

127.    The Fraudulent Misrepresentations were false statements made concerning a material fact.

128.    Gedcore knew that the Fraudulent Misrepresentations were false.

129.    Gedcore intended that the Fraudulent Representations induce Yuken to act on the representations.

130.    Yuken has been damaged acting in reliance of the Fraudulent Misrepresentations.

131.    Admasie is liable for the damages caused by the Fraudulent Misrepresentations to the extent he received distribution(s) of assets as part of an attempt to wind up, dissolve and terminate Gedcore.

WHEREFORE, Plaintiff, Yuken Corp. demands judgment against Admasie for damages, interest, court costs, and such other relief that is just. Plaintiff reserves the right to seek punitive damages.

## Count XV - Fraud-Fanuel

132.    Plaintiff re-adopts and re-alleges each and every allegation contained in paragraphs 9(a) and 10 through 20 above.

133.    The Fraudulent Misrepresentations were false statements made concerning a material fact.

134.    Fanuel knew that the Fraudulent Misrepresentations were false.

135.    Fanuel intended that the Fraudulent Representations induce Yuken to act on the representations.

136.    Yuken has been damaged acting in reliance of the Fraudulent Misrepresentations.

137.    Fanuel conspired and worked in concert with Tesfaye and Admasi to induce, aid , abet, encourage and provide substantial assistance to Gedcore relative to the Fraudulent Misrepresentation.  More specifically, upon information and belief, Admasie, Fanuel and Tesfaye, each individually and on behalf of Gedcore, agreed to work together and knowingly allow Gedcore to be used as the vehicle to unlawfully scam and dupe Yuken out of $150,000 by: (i) having Admasie make the Fraudulent Misrepresentations to Yuken to induce Yuken to pay the Deposit to Gedcore; (ii) having Gedcore accept and collect the payment of the Deposit and then utilize and disburse the Deposit for their own individual and collective benefit; (iii) not requiring that Gedcore hold, keep and maintain the Deposit intact so that the Deposit could be returned to Yuken once the Contract was terminated; (iv) terminating Gedcore before a lawsuit could be filed and served relative to the Deposit; and, (v) not making adequate provisions for the payment of the debts, liabilities, and obligations of Gedcore, including those owed to Yuken.

138.     Accordingly, Fanuel is liable for the damages caused by the Fraudulent Misrepresentations.

WHEREFORE, Plaintiff, Yuken Corp. demands judgment against Fanuel for damages, interest, court costs, and such other relief that is just. Plaintiff reserves the right to seek punitive damages.

### Count XVI - Fraud-Fanuel (Georgia Business Corporation Code)

139.     Plaintiff re-adopts and re-alleges each and every allegation contained in paragraphs 9(a) and 10 through 20 above.

140.     The Fraudulent Misrepresentations were false statements made concerning a material fact.

141.     Gedcore knew that the Fraudulent Misrepresentations were false.

142.     Gedcore intended that the Fraudulent Representations induce Yuken to act on the representations.

143.     Yuken has been damaged acting in reliance of the Fraudulent Misrepresentations.

144.     Fanuel is liable for the damages caused by the Fraudulent Misrepresentations to the extent he received distribution(s) of assets as part of an attempt to wind up, dissolve and terminate Gedcore.

WHEREFORE, Plaintiff, Yuken Corp. demands judgment against Fanuel for damages, interest, court costs, and such other relief that is just. Plaintiff reserves the right to seek punitive damages.

### Count XVII - Fraud-Tesfaye

145.     Plaintiff re-adopts and re-alleges each and every allegation contained in paragraphs 1 through 9(a) and 10 through 20 above.

146.     The Fraudulent Misrepresentations were false statements made concerning a material fact.

147.     Tesfaye knew that the Fraudulent Misrepresentations were false.

148.     Tesfaye intended that the Fraudulent Representations induce Yuken to act on the representations.

149.     Yuken has been damaged acting in reliance of the Fraudulent Misrepresentations.

150.     Tesfaye conspired and worked in concert with Fanuel and Admasi to induce, aid, abet, encourage and provide substantial assistance to Gedcore relative to the making of the Fraudulent Misrepresentation.  More specifically, upon information and belief, Admasie, Fanuel and Tesfaye, each individually and on behalf of Gedcore, agreed to work together and knowingly allow Gedcore to be used as the vehicle to unlawfully scam and dupe Yuken out of $150,000 by: (i) having Admasie make the Fraudulent Misrepresentations to Yuken to induce Yuken to pay the Deposit to Gedcore; (ii) having Gedcore accept and collect the payment of the Deposit and then utilize and disburse the Deposit for their own individual and collective benefit; (iii) not requiring that Gedcore hold, keep and maintain the Deposit intact so that the Deposit could be returned to Yuken once the Contract was terminated; (iv) terminating Gedcore before a lawsuit could be filed and served relative to the Deposit; and, (v) not making adequate provisions for the payment of the debts, liabilities, and obligations of Gedcore, including those owed to Yuken.

151.     Accordingly, Tesfaye is liable for the damages caused by the Fraudulent Misrepresentations.

WHEREFORE, Plaintiff, Yuken Corp. demands judgment against Tesfaye for damages, interest, court costs, and such other relief that is just. Plaintiff reserves the right to seek punitive damages.

## Count XIII- Fraud-Tesfaye (Georgia Business Corporation Code)

152.     Plaintiff re-adopts and re-alleges each and every allegation contained in paragraphs 1 through 9(a) and 10 through 20 above.

153.    The Fraudulent Misrepresentations were false statements made concerning a material fact.

154.    Gedcore knew that the Fraudulent Misrepresentations were false.

155.    Gedcore intended that the Fraudulent Representations induce Yuken to act on the representations.

156.    Yuken has been damaged acting in reliance of the Fraudulent Misrepresentations.

157.    Tesfaye is liable for the damages caused by the Fraudulent Misrepresentations to the extent he received distribution(s) of assets as part of an attempt to wind up, dissolve and terminate Gedcore.

WHEREFORE, Plaintiff, Yuken Corp. demands judgment against Tesfaye for damages, interest, court costs, and such other relief that is just. Plaintiff reserves the right to seek punitive damages.

Dated:  April 18, 2022

SHAPIRO RAMOS, professional association
*Counsel for Plaintiff*
19 West Flagler Street, Suite #516
Miami, FL 33130
Telephone:  (305) 374-0052
Facsimile:   (305) 374-7320

By:___/s/ Jeffrey P. Shapiro_____
Jeffrey P. Shapiro, FBN 352284
*jps@shapiroramos.com*
*jr@shapiroramos.com*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 18, 2022, I filed the foregoing document with the

Clerk of Courts using the Federal Court's e-filing portal and a copy was provided by Electronic Mail

to:

| | |
|---|---|
| Monica Kovecses, Esq.<br>Akerman, LLP<br>420 South Orange Ave, Suite 1200<br>Orlando, FL 32801<br>Monica.kovecses@akerman.com<br>*Attorney for Defendants* | Megan Deleon, Esq.<br>Akerman, LLP<br>420 South Orange Ave, Suite 1200<br>Orlando, FL 32801<br>Megan.deleon@akerman.com<br>*Attorney for Defendants* |

*/s/ Jeffrey P. Shapiro*
Jeffrey P. Shapiro, Esq.
Florida Bar No. 352284

"Exhibit A"

# GEDC◉RE

Contract No:  20210516-01-YUK

March 17th , 2021

This Contract is made and executed on the date mentioned above between:

**Yuken Corp**
**PO Box 652633**
**Miami,FL 33265**
**(Hereinafter referred to as "The Buyer")**

And

**Gedcore LLC**
**349 Ardmore Court, NW**
**Atlanta, GA**
**U.S.A**
**(Hereinafter referred to as "The Seller")**

The seller and the buyer hereby have agreed on the contract with the following terms and conditions

1. **COMMODITY**:     FROZEN LOBSTER TAIL

2. **ORIGIN**:     Sultanate of Oman

3. **QUANTITY**:     APRIL 2021 – 25,000 LB , MAY – JULY 2021 100,000 LB/MONTH

4. **UNIT PRICE**:

| | |
|---|---|
| 42gr - 70gr: | **USD 27.00** |
| 71gr - 98gr: | **USD 29.25** |
| 99gr - 126gr: | **USD 31.45** |
| 126gr and above: | **UDS 32.30** |

5. **PACKING**:     4 4.54 KG Net Weight x 18.143 KG Net Weight

1

# GEDCORE

http://www.gedcore.com

6. **PAYMENT:**

   150,000 USD TT INITIAL DEPOSIT at the signing of this contract. (TO BE REFUNDED AT THE
   TERMINATION OF THIS CONTRACT.)

   100% TT OF THE INVOICE ONCE THE PRODUCTS HAVE CLEARED US CUSTOMS AND FDA.

7. **DOCUMENTS REQUIRED:**

   a. SIGNED COMMERCIAL INVOICE IN 3 ORIGINALS
   b. PACKING LIST IN 3 ORIGINALS
   c. FULL SET(S) 3/3 ORIGINAL CLEAN BILL OF LOADING,
   d. CERTFIICATE OF ORIGIN
   e. CERTIFICATE OF HEALTH

8. **INSURANCE:** INSURANCE IS TO BE PAID BY THE SHIPPER.

9. **LICENCES:** THE BUYER SHALL BE RESPONSIBLE FOR OBTAINING AND MAINTAINING IN FORCE
   ANY NECESSARY IMPORT LICENSE FOR THE UNITED STATES OF AMERICA . THE FAILURE TO
   OBTAIN AND MAINTAIN IN FORCE SUCH LICENCE/S SHALL NOT BE SUFFICIENT GROUNDS FOR A
   CLAIM OF FORCE MAJEURE IF THE REGULATIONS IN FORCE AT THE TIME WHEN THE CONTRACT
   WAS MADE, CALLED FOR SUCH LICENCE/S TO BE OBTAINED.

10. **FDA Rejection:** IF THE PRODUCT IS REJECTED BY THE US FDA, THE SELLER WILL SHIP BACK THE
    PRODUCT AND WILL NOT CHARGE THE BUYER FOR THE PRODUCT AND SHIPPING COSTS.

11. **TAXES AND LEVIES AND CHARGES AT DISCHARGING PORT:** ANY EXISTING OR FUTURE TAXES,
    OR LEVIES IN THE NATURE OF TAXES, FREIGHT OR SHIPPING IMPOSED BY THE COUNTRY OF
    DESTINATION SHALL BE FOR ACCOUNT OF THE BUYER. SHOULD THERE BE ANY PORT
    DEMURRAGE AND/OR SHIPPING CARRIER DETENTION COST INCURRED DUE TO THE LATE
    PAYMENT RECEIVED FROM BUYER, ALL THESE DEMURRAGE AND DETENTION WILL BE AT
    BUYER'S ACCOUNT.

12. **JURISDICTION SETTLEMENT**: ANY CONTROVERSIES/DISPUTES ARISING OUT OF OR
    CONCERNING TO THIS CONTRACT NOT BEING SETTLED AMICABLY BY AND BETWEEN THE TWO
    PARTIES, SHALL BE REFERRED TO AND RESOLVED AT U.S.A ARBITRATION CENTERS AND
    APPLICABLE LAWS TO BE APPLIED.

13. **DEPOSIT:** THE DEPOSIT AMOUNT SHALL BE PAID BACK IN FULL TO THE BUYER AT THE
    TERMINATION OF THIS CONTRACT.

14. **FORCE MAJEURE**: IN THE EVENT OF NATURAL DISASTERS, FIRES, WARS DECLARED OR
    UNDECLARED, EXPLOSIONS, STRIKES, LOCK-OUTS, LABOR DISPUTES, BLOCKAGES, EMBARGOES,
    ACCIDENT AND BREAKDOWN TO MACHINERY, GOVERNMENT OR RELEVANT AUTHORITY'S
    ANNOUNCEMENT, THEN THE SELLER SHALL GIVE PROMPT NOTICE OF SAME TO THE BUYER
    NOTIFYING THE DECLARATION OF FORCE MAJEURE AND REFUND THE DEPOSIT IN FULL



2



http://www.gedcore.com

15. **OTHERS:** ANY CHANGES OR ADJUSTMENT TO THIS CONTRACT MUST BE MADE IN WRITING WITH THE AGREEMENT AND DULY SIGNATURES OF BOTH PARTIES.  THIS CONTRACT IS DRAWN UP IN TWO (2) ORIGINALS IN ENGLISH WHICH ARE RETAINED BY EACH PARTY. THE CONTRACT SIGNED THROUGH FAX IS CONSIDERED AS ORIGINAL NATURE.

FOR AND ON BEHALF OF
THE SELLER:

Caleb Daniel Admassie
**Gedcore**

FOR AND ON BEHALF OF
THE BUYER:

Jimmy Yuken
**Yuken Corp**